IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN ALFRED CULP,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | MEMORANDUM DECISION AND ORDER GRANTING PETITIONER'S MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255<br><br><br>Civil Case No. 2:16-CV-672 TS<br>Criminal Case No. 2:11-CR-293 TS<br><br>District Judge Ted Stewart |

   This matter is before the Court on Petitioner John Alfred Culp's Motion to Correct Sentence Under 28 U.S.C. § 2255. For the reasons discussed below, the Court will grant the Motion.

## I.  BACKGROUND

   On April 13, 2011, Petitioner was charged with possession of an unregistered sawed-off shotgun and being a felon in possession of a firearm. On November 2, 2011, Petitioner pleaded guilty to possession of an unregistered sawed-off shotgun.

   The Presentence Report identified one of Petitioner's prior convictions as a crime of violence under United States Sentencing Guideline ("USSG") § 4B1.2, a 1995 Utah conviction for witness tampering. This resulted in a base offense level of 22 instead of 20.[1] After hearing from the parties, the Court determined that Petitioner had a total offense level of 21, a criminal history category of V, and an advisory guideline range of 70 to 87 months. The Court imposed a

---

[1] The Presentence Report included other enhancements that are not relevant here.

sentence of 75 months, to run concurrent to Petitioner's state court sentence. Petitioner did not file a direct appeal.

Petitioner filed the instant Motion on June 23, 2016. Petitioner argues that his sentence is unconstitutional in light of *Johnson v. United States*.[2] In particular, Petitioner contends that his prior conviction for witness tampering can no longer be considered a crime of violence.

## II.  DISCUSSION

The Supreme Court in *Johnson* considered the validity of the Armed Career Criminal Act ("ACCA"). The ACCA, 18 U.S.C. § 924(e), provides for increased penalties for a person who violates 18 U.S.C. § 922(g) and has three previous convictions for a violent felony or a serious drug offense. The Act defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .[3]

The first part of the definition—"has as an element the use, attempted use, or threatened use of physical force against the person of another"—is known as the force clause. The second portion—"burglary, arson, extortion, or crimes involving the use of explosives"—is the enumerated offenses provision. The last clause—"crimes that otherwise involve conduct that presents a serious potential risk of physical injury to another"—is called the residual clause. In

---

[2] 135 S. Ct. 2551 (2015).

[3] 18 U.S.C. § 924(e)(2)(B).

*Johnson*, the Supreme Court held that the residual clause was unconstitutionally vague.[4] However, the Court stated that "[t]oday's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."[5] The Supreme Court in *Welch v. United States*,[6] held that *Johnson*'s constitutional holding applied retroactively to cases on collateral review.

The Sentencing Guidelines provide for several sentencing enhancements for crimes constituting "crimes of violence." Relevant here, USSG § 2K2.1 calculates a defendant's base offense level depending on how many prior convictions the defendant sustained for "either a crime of violence or a controlled substance offense." "Crime of violence" is, in turn, defined by § 4B1.2. Section 4B1.2(a) defines a "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.[7]

The Tenth Circuit has held that the "'crime of violence' definition set forth in . . . § 4B1.2, is virtually identical to the definition of a 'violent felony'" contained in the ACCA.[8] Thus, the Tenth Circuit has applied the Supreme Court's "ACCA 'violent felony' analysis" to

---

[4] *Johnson*, 135 S. Ct. at 2563.

[5] *Id.*

[6] 136 S. Ct. 1257 (2016).

[7] USSG § 4B1.2(a). The definition of crime of violence in USSG § 4B1.2(a) was recently amended. The Court quotes from the relevant language in effect at the time of Petitioner's sentence.

interpret "§ 4B1.2's definition of 'crime of violence.'"[9]  Importantly, after *Johnson*, the Tenth Circuit held that § 4B1.2(a)(2)'s residual clause is unconstitutionally vague.[10]  However, the Tenth Circuit has not directly addressed whether *Johnson*'s application to the Guidelines applies retroactively to petitioners seeking collateral review.

The Supreme Court recently granted certiorari in *Beckles v. United States*.[11]  In *Beckles*, the Court agreed to resolve the question of whether *Johnson* applies to the residual clause of USSG § 4B1.2 and, if so, whether it applies retroactively.

With this background in mind, the Court proceeds to the parties' arguments.  The Court first considers the government's Motion to Stay pending the outcome of *Beckles*.  Next, the Court considers the government's arguments that *Johnson* should not apply retroactively to the Guidelines and that Petitioner has failed to demonstrate that his case falls within *Johnson*.  The Court then considers the government's argument that Petitioner has procedurally defaulted on his claim by failing to challenge the enhancement before this Court or on direct appeal.  Finally, the Court considers whether Petitioner's previous conviction for witness tampering is a crime of violence under the force clause of USSG § 4B1.2.

---

[8] *United States v. Wray*, 776 F.3d 1182, 1184 (10th Cir. 2015) (citations and quotation marks omitted).

[9] *Id.* at 1184–85.

[10] *United States v. Madrid*, 805 F.3d 1204, 1211 (2015) ("The concerns about judicial inconsistency that motivated the Court in *Johnson* lead us to conclude that the residual clause of the Guidelines is also unconstitutionally vague.  If one iteration of the clause is unconstitutionally vague, so too is the other.").

[11] S. Ct. No. 15-8544, *cert. granted*, 579 U.S. ___, 136 S. Ct. 2510 (June 29, 2016).

A.     MOTION TO STAY

The government has filed a Motion to Stay, seeking a stay of this case pending the Supreme Court's ruling in *Beckles*. The government correctly points out that to succeed on his claim, Petitioner must successfully argue that *Johnson* applies to the Sentencing Guidelines and that it does so retroactively to cases on collateral review.[12] Both questions are before the Court in *Beckles*. In support of its request, the government points to a case where the Tenth Circuit recently abated an appeal until the Supreme Court issues a decision in *Beckles*.

Petitioner opposes the government's request for a stay. Petitioner argues that if his Motion is successful and the Court agrees to a low-end sentence of the guideline range without the two-level enhancement for his prior witness tampering conviction, his sentence would be complete. Petitioner further points out that briefing in *Beckles* is not complete and oral argument has not been scheduled. Thus, it is unclear when the Supreme Court might issue its decision.

The Court finds Petitioner's arguments persuasive. While it would certainly be helpful to have Supreme Court guidance on the issues presented in this Motion, it is uncommon that the Supreme Court has spoken directly on an issue presented to this Court. The Court does not have the luxury of waiting for the Supreme Court to rule on every issue before proceeding. Moreover, the Court agrees that Petitioner would suffer real harm if a stay is granted. If Petitioner's claim is meritorious, he is entitled to immediate relief. Since *Beckles* is not fully briefed and is not set for oral argument, it is unclear when the Supreme Court will rule. Delaying this matter has the very real potential of damaging Petitioner's constitutional rights. "When applying for a stay, a

---

[12] The government concedes that *Johnson* applies to the residual clause of USSG § 4B1.2 in cases on direct appeal. This concession is consistent with the Tenth Circuit's conclusion in *Madrid*.

5

party must demonstrate a clear case of hardship or inequity if even a fair possibility exists that the stay would damage another party."[13]  The government's request for a stay is based on convenience, not hardship or inequity.  The government has ably presented its arguments on the merits and has failed to present a sufficient justification for a stay.  Therefore, the Court will deny the government's request and will consider the other arguments raised by the parties.

B.  RETROACTIVE APPLICATION OF *JOHNSON* TO THE GUIDELINES

The first substantive question to be addressed is whether *Johnson* applies retroactively to the guidelines.  As set forth above, the Tenth Circuit has held that under *Johnson*, the residual clause of § 4B1.2 is unconstitutionally vague.  Further, the government concedes that *Johnson* applies to cases under the residual clause of the Guidelines on direct appeal.  However, neither the Supreme Court nor the Tenth Circuit has directly held that *Johnson* applies retroactively to the Guidelines in cases on collateral review and the government contends that it does not.

As a general matter, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."[14]  There are two exceptions to this general rule.  "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rul[e] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."[15]  Petitioner argues that *Johnson* is a substantive rule, while the government contends that *Johnson* announced a procedural rule when applied to the guidelines.

---

[13] *Ben Ezra, Weinstein & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) (quotation marks omitted).

[14] *Teague v. Lane*, 489 U.S. 288, 310 (1989).

[15] *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (alteration in original) (quotation marks omitted).

The Supreme Court's analysis in *Welch* is helpful in resolving this issue. There, the Court considered the question of whether *Johnson* announced a substantive rule. The Court explained:

> A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. Procedural rules, by contrast, regulate only the manner of determining the defendant's culpability. Such rules alter the range of permissible methods for determining whether a defendant's conduct is punishable. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.[16]

Under this framework, the Court concluded that the rule announced in *Johnson* was substantive.

> By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering the range of conduct or the class of persons that the [Act] punishes. Before *Johnson*, the Act applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause. An offender in that situation faced 15 years to life in prison. After *Johnson*, the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison. The residual clause is invalid under *Johnson*, so it can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that even the use of impeccable factfinding procedures could not legitimate a sentence based on that clause.[17]

In rejecting the contention that *Johnson* was a procedural rule, the Court stated "*Johnson* had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act."[18] For example,

---

[16] *Welch*, 136 S. Ct. 1257, 1264–65 (citations and quotation marks omitted).

[17] *Id.* at 1265.

[18] *Id.*

*Johnson* did not "allocate decisionmaking authority between judge and jury."[19] Nor did it "regulate the evidence that the court could consider in making its decision"[20] "*Johnson* affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied."[21] Thus, the Court held that *Johnson* is a substantive decision that has retroactive effect in cases on collateral review.

Two Courts of Appeal, relying on *Welch*, have concluded that *Johnson* applies retroactively to Guidelines cases. In *In re Hubbard*,[22] the Fourth Circuit addressed the government's argument that application of the *Johnson* rule to the Guidelines would be procedural. The government argued that the rule was procedural "because (1) it does not change the range of legally permissible outcomes (which are limited by statutory minimums and maximums) and (2) errors in calculating a defendant's advisory guidelines range have been characterized as procedural by the Supreme Court."[23] The court rejected both arguments.

The court noted that *Welch* "declared unequivocally that *Johnson* was 'a substantive decision and so has retroactive effect under *Teague* in cases on collateral review.'"[24] There, as here, "the government has cited no case to support the proposition that a rule can be substantive in one context but procedural in another."[25] Further, the court noted that removing residual clause language from the Guidelines "would 'alter[ ] the range of conduct or the class of persons

---

[19] *Id.* (quotation marks omitted).

[20] *Id.*

[21] *Id.*

[22] 825 F.3d 225 (4th Cir. 2016).

[23] *Id.* at 234.

[24] *Id.* (quoting *Welch*, 136 S. Ct. at 1265).

[25] *Id.*

that the [Sentencing Guidelines] punishes.'"[26]  "That is, the 'substantive reach' of the Sentencing Guidelines would be altered just as much as was true for the ACCA."[27]

The court further noted that "although available sentences are technically controlled by statute, the Sentencing Guidelines hardly represent a mere suggestion to courts about the proper sentences defendants should receive."[28]  "The federal system adopts procedural measures intended to make the Sentencing Guidelines the lodestone of sentencing."[29]  "[W]hen a Guidelines range moves up or down, offenders' sentences move with it."[30]

The Sixth Circuit agreed with this reasoning in *In re Patrick*.[31]  The Sixth Circuit, like the Tenth Circuit, has determined that on direct review *Johnson* "compels invalidation of the Guidelines' residual clause as unconstitutionally vague."[32]  As here, the government argued that "the rule announced in *Johnson* is procedural, rather than substantive, and thus does not apply retroactively on collateral review."[33]  The court found the government's arguments unconvincing.

> The Supreme Court's rationale in *Welch* for finding *Johnson* retroactive applies equally to the Guidelines.  *Johnson* held a statutory provision of the ACCA unconstitutional, and now that provision may not be used to enhance a sentence. Striking the Guidelines' residual clause, just like striking the ACCA's residual clause, would change[ ] the substantive reach of the Guidelines by altering the range of conduct or the class of persons that the [Guidelines] punish[ ].  As

---

[26] *Id.* (quoting *Welch*, 136 S. Ct. 1265) (alterations in original).

[27] *Id.*

[28] *Id.* at 235.

[29] *Peugh v. United States*, ---U.S.---, 133 S. Ct. 2072, 2084 (2013).

[30] *Id.*

[31] ---F.3d---, 2016 WL 4254929 (6th Cir. Aug. 12, 2016).

[32] *Id.* at *1 (citing *United States v. Pawlak*, 822 F.3d 902, 903 (6th Cir. 2016).

[33] *Id.* at *2.

9

applied to the Guidelines, *Johnson* substantively changes the conduct by which federal courts may enhance the sentence of a defendant. [S]ome crimes will no longer fit the Sentencing Guidelines' definition of a crime of violence, . . . and will therefore be incapable of resulting in a career-offender sentencing enhancement. Although a defendant may still be subject to the same statutory range of punishments through provisions of the Guidelines other than the residual clause, even the use of impeccable factfinding procedures could not legitimate a sentence based on that clause. It follows that *Johnson* is a substantive decision.[34]

The court similarly concluded that *Johnson* was not a procedural decision as applied to the Guidelines.

Invalidation of the Guidelines' residual clause has nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced as a career offender, and *Johnson*'s application to the Guidelines does not allocate decisionmaking authority between judge and jury, or regulate the evidence that the court could consider in making its decision.[35]

The court also rejected the government's argument that the Guidelines were procedural because they are advisory. The court concluded that "the discretionary nature of the Guidelines is inconsequential because they nonetheless are 'the lodestone of sentencing' and have 'considerable influence.'"[36] "District courts have no discretion to forgo calculation and consideration of a defendant's Guidelines' range before imposing a sentence, as they 'must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process' to avoid reversal."[37] "The Guidelines accordingly have a 'real and pervasive' and only 'quasi-advisory' effect on sentencing, 'bringing them closer to a statute which fixes sentences than a sort of suggested opinion.'"[38] Accordingly, the court held that *Johnson*'s application to

---

[34] *Id.* at *3 (alterations in original) (citations and quotation marks omitted).

[35] *Id.* (quotation marks omitted).

[36] *Id.* at *4 (quoting *Pawlak*, 822 F.3d at 905).

[37] *Id.* (quoting *Pawlak*, 822 F.3d at 905) (emphasis omitted).

[38] *Id.* (quoting *Pawlak*, 822 F.3d at 906).

the Guidelines is a new substantive rule that applies retroactively to petitioners on collateral review.

Several District Courts, including this Court, have similarly held that *Johnson*'s application to the Guidelines is a new substantive rule that applies retroactively to petitioners on collateral review.[39] In addition, a number of courts, including the Tenth Circuit, have authorized second or successive § 2255 petitions, finding that the petitioner made a prima facie showing that *Johnson* applies retroactively to the Guidelines.[40] The Court finds the reasoning of these cases persuasive and agrees that the rule announced in *Johnson* is substantive as applied to the Guidelines.

The government's argument that the rule is procedural is not persuasive. As both *Hubbard* and *Patrick* noted, the government points to no authority to support the notion that a rule can be substantive in one context and procedural in another.[41] The fact that the Supreme Court in *Welch* applied the rule announced in *Johnson* retroactively to cases on collateral review appears dispositive when combined with the Tenth Circuit's decision in *Madrid* that the residual clause of USSG §4B1.2 is unconstitutional

The government argues that the rule is not substantive as applied to the Guidelines because the function of the *Johnson* rule is different in the context of the ACCA and the Guidelines. The government contends that, under the ACCA, use of the residual clause raises both the minimum and maximum terms of imprisonment. An erroneous application of § 4B1.2,

---

[39] *Andrews v. United States*, Civ. No. 2:16-CV-501-DB, 2016 WL 4734593, at *3–5 & n.4 (D. Utah. Sept. 9, 2016) (collecting cases).

[40] *In re Encinias*, 821 F.3d 1224, 1226 (10th Cir. 2016).

[41] *Hubbard*, 825 F.3d at 234; *Patrick*, 2016 WL 4254929, at *3.

11

however, merely results in an incorrect sentencing range, but does not otherwise alter the minimum and mandatory sentences.

The Court disagrees with this assessment. The same reasoning used by the Supreme Court in *Welch* to determine that the rule announced in *Johnson* is substantive applies with equal force to the Guidelines. Removing the residual clause from the Guidelines changes "the substantive reach of the [Guidelines], altering the range of conduct or the class of persons that the [Guidelines] punishes."[42] "As applied to the Guidelines, *Johnson* substantively changes the conduct by which federal courts may enhance the sentence of a defendant."[43] Before *Johnson*, the residual clause of the Guidelines was used to enhance a defendant's sentencing range, while after *Johnson* (and the Tenth Circuit's extension of *Johnson* to the Guidelines in *Madrid*), the same person engaged in the same conduct would not receive such an enhancement. Under this framework, *Johnson* is a substantive decision even when applied to the Guidelines. Moreover, *Johnson* is not procedural in that it did not allocate decision making authority between the judge and jury, nor did it regulate the evidence the court could consider in making its decision.[44]

Further, the government's argument fails to fully appreciate the role the guidelines play in sentencing. As the Tenth Circuit stated in *Madrid*, "the Guidelines are the beginning of all sentencing determinations."[45] "[T]he Guidelines are the mandatory starting point for a sentencing determination" and the Court "can be reversed for failing to correctly apply them

---

[42] *Welch*, 136 S. Ct. at 1265.

[43] *Patrick*, 2016 WL 4254929, at *3.

[44] *Welch*, 136 S. Ct. at 1265.

[45] *Madrid*, 805 F.3d at 1211.

despite the ability to later deviate from the recommended range."[46] Thus, the fact that the Guidelines are advisory does not alter the Court's conclusion.[47] For all these reasons, the Court finds that that the rule announced in *Johnson* is substantive as applied to the Guidelines.

The government further argues that Petitioner has failed to show that his case falls within *Johnson* because he has not identified anything in the record to show that the Court enhanced his sentence based on the residual clause of the Guidelines. This argument necessarily collapses into the merits analysis. There is no question that Petitioner's witness tampering conviction does not fall within the enumerated offenses clause. Thus, it either falls within the force clause or the residual clause. If it does not fall within the force clause, the only conclusion is that the Court relied on the residual clause to support the enhancement. The government's suggestion that Petitioner must affirmatively show that the Court relied on the residual clause at sentencing is unworkable.[48] To be clear, Petitioner must still show that the enhancement was unlawful and can only do so by showing that the only way it could be applied is through use of the residual clause. But Petitioner need not provide specific evidence showing that the Court explicitly relied on the residual clause at the time of sentencing.

C.   PROCEDURAL DEFAULT

The government next argues that Petitioner has procedurally defaulted on his claim by failing to challenge the enhancement before this Court or on direct appeal. "When a defendant

---

[46] *Id.*

[47] *Id.* ("That the Guidelines are advisory, and not statutory, does not change our analysis."); *see also Patrick*, 2016 WL 4254929, at *4 (same).

[48] *See In re Chance*, ---F.3d---, 2016 WL 4123844, at *5 (11th Cir. Aug. 2, 2016) ("[W]e believe the required showing is simply that § 924(c) may no longer authorize his sentence as that statute stands after *Johnson*—not proof of what the judge said or thought at a decades-old sentencing.").

fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered."[49] Petitioner has shown both cause and prejudice.

The Supreme Court has held that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim."[50] This standard is satisfied when a decision of the Supreme Court (1) explicitly overrules one of its prior precedents, (2) overturns a longstanding and widespread practice to which a near unanimous body of lower-court authority has adhered, or (3) disapproves a practice that the Supreme Court had arguably sanctioned in the past.[51]

> By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that this Court has ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim before a . . . court is sufficiently excusable to satisfy the cause requirement.[52]

Under this standard, the Court finds that Petitioner has adequately demonstrated cause excusing his failure to raise his objection in this Court and on direct appeal. The Supreme Court in *Johnson* expressly overruled its prior precedent in *James v. United States* and *Sykes v. United States*, where "the Court rejected suggestions by dissenting Justices that the residual clause violates the Constitution's prohibition of vague criminal laws."[53] Further, prior to *Johnson*,

---

[49] *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996).

[50] *Reed v. Ross*, 468 U.S. 1, 16 (1984).

[51] *Id.* at 17.

[52] *Id.*

[53] *Johnson*, 135 S. Ct. at 2556.

14

Case 2:16-cv-00672-TS   Document 13   Filed 09/27/16   Page 15 of 20

circuit courts routinely rejected vagueness challenges to USSG § 4B1.2 relying on *James* and *Sykes*.[54] Finally, the Supreme Court expressly disapproved a practice—reliance on the residual clause—that it had sanctioned in the past. Therefore, Petitioner has established cause for his failure to challenge the enhancement.

To demonstrate prejudice, Petitioner must show that the alleged error "worked to his actual and substantial disadvantage."[55] Possibly receiving an increase in the amount of jail time to which he was sentenced as a result of an incorrect guideline calculation is sufficient to establish prejudice.[56] Thus, Petitioner has demonstrated cause and prejudice to excuse his procedural default.

D.   WITNESS TAMPERING

Finally, the Court considers the merits of Petitioner's claim. Petitioner argues that his prior conviction for witness tampering cannot be classified as a crime of violence because it contains no element of violent, physical force and can be committed recklessly. The Court agrees that Petitioner's conviction for witness tampering is not a crime of violence. Therefore, the Court need not consider Petitioner's argument concerning recklessness.

Petitioner has a 1995 Utah conviction for witness tampering. The witness tampering statute at the relevant time stated:

---

[54] *See United States v. Travis*, 747 F.3d 1312, 1314 n.1 (11th Cir. 2014); *United States v. Van Mead*, 773 F.3d 429, 438 n.7 (2d Cir. 2014); *United States v. Spencer*, 724 F.3d 1133, 1145–46 (9th Cir. 2013); *United States v. Cowan*, 696 F.3d 706, 708–09 (8th Cir. 2012); *United States v. Mobley*, 687 F.3d 625, 632 n.7 (4th Cir. 2012).

[55] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[56] *United States v. Horey*, 333 F.3d 1185, 1188 (10th Cir. 2003) ("As there is an increase in the actual amount of jail time that may be served using the improperly-applied guideline range, Mr. Horey has established prejudice."); *see also Glover v. United States*, 531 U.S. 198, 203 (2001) (stating that "any amount of actual jail time has Sixth Amendment significance").

15

> (1) A person is guilty of a third degree felony if, believing that an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a person to:
> (a) testify or inform falsely;
> (b) withhold any testimony, information, document, item;
> (c) elude legal process summoning him to provide evidence; or
> (d) absent himself from any proceeding or investigation to which he has been summoned.
> (2) A person is guilty of a third degree felony if he:
> (a) commits any unlawful act in retaliation for anything done by another as a witness or informant;
> (b) solicits, accepts, or agrees to accept any benefit in consideration of his doing any of the acts specified under Subsection (1); or
> (c) communicates to a person a threat that a reasonable person would believe to be a threat to do bodily injury to the person, because of any act performed or to be performed by the person in his capacity as a witness or informant in an official proceeding or investigation.[57]

"In determining whether a conviction qualifies as a crime of violence under § 4B1.2, we apply a categorical approach that looks to the words of the statute and judicial interpretations of it, rather than to the conduct of any particular defendant convicted of that crime."[58] Where a statute is "divisible," that is, when it "lists multiple, alternative elements, and so effectively creates several different crimes," courts use a modified categorical approach to "identify the crime of conviction in the case at hand."[59]

The government does not argue that Utah's witness tampering statute is categorically a crime of violence. Instead, the government argues that it is a divisible statute and the Court can use the modified categorical approach to identify the crime of conviction. Petitioner does not

---

[57] Utah Code Ann. § 76-8-508 (1995).

[58] *United States v. McConnell*, 605 F.3d 822, 825 (10th Cir. 2010) (quotation marks omitted).

[59] *Madrid*, 805 F.3d at 1207 (quotation marks omitted).

16

appear to dispute that the statute is divisible.  Therefore, the Court will proceed to the modified categorical approach to identify the crime of conviction.

The government has provided the charging document from Petitioner's state court conviction, which states that he "did communicate to a person a threat that a reasonable person would believe to be a threat to do bodily injury to the person, because of any act performed or to be performed by the person in his capacity as a witness or informant in an official proceeding or investigation."[60]  From this, the government argues and the Court agrees that Petitioner was charged with and pleaded guilty to violating Utah Code Ann. § 76-8-508(2)(c).  Thus, the question becomes whether this provision of the statute constitutes a crime of violence under the force clause of the Guidelines.

As stated, USSG § 4B1.2(a)(1) defines crime of violence as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  In this context, the threatened use of physical force against the person of another requires "both the intent to use force and a communication of that threat."[61]

The government argues "based on the plain language of the [Utah witness tampering] statute—'communicates to a person a threat . . . to do bodily injury to the person'—section (2)(c) clearly and precisely falls within the 'threatened use of physical force against the person of another.'"[62]  The government, however, misquotes the applicable provision of the statute and, by doing so, changes its meaning.  The Utah statute does not require a person communicate a threat to do bodily injury to a person.  Instead, the statute simply requires that a person communicate "a

---

[60] Docket No. 10-1, at 1.

[61] *United States v. King*, 979 F.2d 801, 803 (10th Cir. 1992).

[62] Docket No. 10, at 19 (quoting Utah Code Ann. § 76-8-508(2)(c)).

threat *that a reasonable person would believe to be a threat* to do bodily injury to the person."[63] This distinction is important. The statute looks not only at what the person transmitting the threat said and did, but also at how a reasonable person receiving the threat would perceive it. The statute does not necessarily require a defendant to communicate an intent to use force, only that the defendant communicate a threat that a reasonable person would believe to be a threat to do bodily injury.

This is made clear from *State v. Spainhower*,[64] a case relied upon by the government. The defendant in *Spainhower* was convicted for violating § 76-8-508(2)(c) after he encountered a witness from a prior case at the grocery store. The defendant "passed by the witness a number of times, staring at her, making eye contact, and grinning."[65] Eventually, the defendant "passed by her again and said, 'I'm going to get you for lying in court, you fat bitch.'"[66]

The defendant argued that there was insufficient evidence to support his conviction. He argued that his statement to the witness was not sufficient evidence of a threat to do bodily injury. The Utah Court of Appeals disagreed. The court noted that "the jury had the duty to determine whether a reasonable person would have understood appellant's statement to be a threat of bodily injury."[67] When making this determination, the jury could consider "both the content of the statement and the context in which it was spoken."[68] While the court noted that the defendant's words—"I'm going to get you"—may connote a threat of bodily injury, "they are

---

[63] Utah Code Ann. § 76-8-508(2)(c) (emphasis added).

[64] 988 P.2d 452 (Utah Ct. App. 1999).

[65] *Id.* at 453.

[66] *Id.*

[67] *Id.* at 454.

[68] *Id.*

18

at the same time vague and indirect" and "could conceivably carry a non-violent meaning."[69] Nevertheless, the court upheld the defendant's conviction, given the inferences that could be drawn from the context in which the words were spoken.

The government states that the Utah Court of Appeals in *Spainhower* held that "'[t]he plain language of the statute unequivocally requires the element of a threat to do bodily injury.'"[70] But, again, the government's selective quotation is misleading. The full quotation is: "The plain language of the statute unequivocally requires the element of a threat to do bodily injury *to be evaluated from an objective perspective*."[71] Thus, the government is incorrect in arguing that Utah state courts have interpreted this provision as requiring a threat to do bodily injury. Instead, the court in *Spainhower* interpreted the statute just as it is written. "A person is guilty under the statute if he communicates 'a threat that *a reasonable person* would believe to be a threat to do bodily injury.'"[72] This does not require, as an element, that a defendant communicate an intent to use physical force against another. Therefore, the Court finds that Petitioner's prior conviction for witness tampering is not a crime of violence under the force clause of USSG § 4B1.2 and he is entitled to relief.

---

[69] *Id.*

[70] Docket No. 10, at 18 (quoting *Spainhower*, 988 P.2d at 455).

[71] *Spainhower*, 988 P.2d at 455 (emphasis added).

[72] *Id.* (quoting Utah Code Ann. § 76-8-508(2)(c)).

## III.  CONCLUSION

It is therefore

ORDERED that the government's Motion to Stay (Docket No. 4) is DENIED.  It is further

ORDERED that Petitioner's Motion to Correct Sentence Under 28 U.S.C. § 2255 (Docket No. 1 in Civil Case No. 2:16-CV-672) is GRANTED.  The Clerk of the Court is directed to enter Judgment in favor of Petitioner and close this case.

The Court will set this matter for resentencing by separate notice.  All further filings should be done in the underlying criminal case.

DATED this 27th day of September, 2016.

BY THE COURT:

_____
Ted Stewart
United States District Judge